[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 261 
(1) The trial judge awarded the sum of $3,500 for injury to rental value of the property from April, 1884, to May, 1891, the date of the trial, and $6,000 for fee damages. The claim in behalf of defendants that there was no evidence to support these findings is not sustained by the record. The plaintiff's building fronts on Park Row, Chambers St. and Duane St. At the junction of Park Row and Chambers St. the defendants directly in front of plaintiff's building and rising above their tracks and platforms, have constructed a two-story building, with sub-story underneath, used for a coaling and water station, with tank house, switch house and coal bins, and there supply their engines with coal and water. Their engines occupy the tracks in front of plaintiff's premises for this purpose, drilling backwards and forwards, and emitting smoke and cinders which are cast upon the plaintiff's house. This structure rises above the building of the plaintiff, and occupies 6,000 square feet of the streets in front of his lot. It prevents to a great extent any outlook from the plaintiff's building on the Park Row and Chambers St. sides, beyond the elevated structure. The maintenance of such a structure at this point would naturally suggest injury to the plaintiff's property, which is located near to the City Hall, Court House and Printing House Square. The award of fee damages is claimed to have been unauthorized on the ground that there was no evidence that the property had been permanently depreciated by the construction in question or the operation of the elevated road, and the defendants refer to the fact that the plaintiff's property was sold in 1877 for $30,000, and that plaintiff paid $60,000 for it in 1884. This latter sum was, as witnesses testified, the value of the property in 1873, when the panic commenced. In 1883 the Brooklyn bridge was completed, which as was shown tended to increase the value of lands in the vicinity of this property. The plaintiff's witnesses testified that since 1884 up to the trial in 1891, there had been no substantial advance in the value of the plaintiff's property, although as was shown the value of the property on Park Row beyond the elevated railroad structure, and but *Page 262 
a short distance from the property of the plaintiff, had largely advanced during that period. The fact that the property of the plaintiff was injured by the occupation of the streets by the structure of the defendants, was testified to by the expert of the defendants. Upon the facts stated and other facts not necessary now to detail, we think there was a basis for the award of fee damages. So also in respect of past damages. The property rented in 1873 for $6,000. It now yields $4,400. The property next to the plaintiff's lot, on each side, in front of which the railroad structure also extends, rents for much less than before the road was constructed, whereas the rents of property just beyond the structure on Park Row and adjacent streets, have largely appreciated. The character of the occupation has changed. The building next west of plaintiff's is owned by a savings bank and rooms are now occupied by a barber shop which before were let for insurance offices. The awards made by the experienced and able judge who tried this case, seem to be reasonable and are justified by the evidence.
(2) It does not appear that any error was committed in the principle upon which the court proceeded in awarding damages. The principles governing the award of damages in cases like this have come to be quite well understood. The property rights of an abutting owner consist of easements of light, air and access. There are no easements of privacy or quiet, or other easements than those mentioned, for which compensation can be claimed. In ascertaining past damages the question of noise may enter as an element into the award, but not in ascertaining the compensation to be paid for the future appropriation of the street for railroad uses. (Am. Bk. Note Co. v. New York Elevated RailroadCo., 129 N.Y. 252.) The damages and the compensation to be paid are measured by the balance of injury over benefits, and in ascertaining them, the advantages and the disadvantages are to be considered, and the benefits, whether general or special, from the construction and operation of the railroad which tend to counterbalance the disadvantages, are to be taken into account in reaching the final result. (Bohn v. Met. El. R. *Page 263 Co., 129 N.Y. 576.) We discover no departure from these principles in the case before us. By the eighteenth finding the sum awarded for past damages was based upon the injury sustained by the plaintiff in the diminished rental value of his premises from 1884 to 1891, from the impairment of his easements of light, air and access, "over and above all special benefits," etc. There is no evidence that there were any general, as distinguished from special benefits, resulting to the property from the railroad, and no inference can be drawn that the trial judge excluded from consideration any advantages, however arising, in arriving at the award. The 19th finding relates to the fee damage, and the sum awarded is for the appropriation of the same easements of light, air and access, and the depreciation of the property thereby "over and above all special benefits," as in the other case. It not appearing that the court adopted an incorrect rule in awarding damages, nor excluded from consideration any benefits, general or special, and as it awarded nothing but consequential damages, the refusals to find that the easements were of nominal value only, separated from the abutting property; or that only damages to the extent that the disadvantages exceed the advantages, could be recovered; or that in estimating damages, benefits caused by the railroad to the plaintiff's property, and not shared by the community in general, should be allowed; or that the station (passenger) near the plaintiff's premises was daily used by great numbers of people, some of whom passed through Park Row, in front of plaintiff's premises; or that this constituted a special benefit thereto, present no legal error.
(3) There is no reason to infer that the noise entered into the damages awarded, or that anything was allowed except for the impairment of the easements of light, air and access. No other easements were considered by the court in awarding damages. If the last clause in 5th finding could bear the interpretation put upon it by the counsel for the defendants, it was harmless in view of the specific grounds of the award of damages stated in the 18th and 19th findings. In respect to *Page 264 
noise this element seems to have been excluded even in fixing past damages, although it might property have been considered.
(4) The case does not present the question whether the owner of property near to, but not abutting on a street occupied by the elevated railway, has any legal ground to complain of its construction and operation. That has not so far as we know been hitherto claimed and is not now claimed by the plaintiff. The building of the plaintiff was a single structure extending along Duane street, but also having a front on Chambers St. and Park Row. It was let by the plaintiff as a whole. The lower floor was used as a restaurant and bar. But the lessee rented the upper stories to different tenants. It was one property and was properly so treated by the court.
(5) The fact that the plaintiff took his deed subject to an outstanding lease having three years to run, did not preclude him from recovering past damages for those years. The principle of the case of Kernochan (128 N.Y. 559) applies.
(6) The cancellation of the Sauer lease of 1887, and the granting of a new lease for the rent of $4,400, was, so far as appears, made in good faith, because the assignee, Lange, was unable to pay so large a rent as $5,000. We think the plaintiff was not precluded from making this change as against the defendants, who were in the street without right as against him, or that he was thereby prevented from having the reduced rent considered in ascertaining the value of the premises.
(7) We think the evidence of the witness Harnett on his redirect-examination, which involved the giving of an opinion as to the amount of injury to the plaintiff's property by reason of the elevated road, was nothing more than an amplification of an opinion called out by the defendants on their cross-examination of the same witness, and that the exception thereto is not tenable.
(8) The exception to the admission of the slips made by the witness Fogg and in part used by him on his examination in chief by the defendants in giving his evidence as to the course of values, even if erroneous, furnishes no ground for reversal. *Page 265 
The plaintiff's counsel, on cross-examination, called for the slips and introduced several of them. They related to transactions in real estate in Park Row. It does not appear from an inspection of the record how they were material, or that they had or could have any effect upon the issue involved. No explanation was given of their force or significance.
We find no material error in the record, and the judgment should, therefore, be affirmed.
All concur.
Judgment affirmed.