JAMES F. MALCOLM, Respondent, *v.* THE NEW YORK ELE-
VATED RAILROAD COMPANY and THE MANHATTAN RAILWAY
COMPANY, Appellants.

ELEVATED RAILROADS — UNIMPROVED LOCALITY — INCREASE OF VALUES. In an action brought by an abutting owner to restrain the operation of an elevated railroad in front of his premises on an avenue in New York city and to recover damages, the trial judge refused the defendants' request to find that prior to the coming of the road the land in the vicinity of the premises in suit was largely unimproved and unutilized, and, while finding that the fee value of the premises had increased since the building of the road, refused to find that it had become greater than at any time prior to the construction of the road, and refused to find that the rental value had increased since the same date. A judgment was rendered in favor of the plaintiff, which awarded him damages for injury to rental value, together with a sum found to be the amount of injury to the fee value of his premises over and above the benefit resulting from the road. *Held* (BARTLETT, O'BRIEN, and GRAY, JJ., dissenting), that the requests to find were in accordance with the undisputed evidence; that if the facts had been found accordingly the legal conclusion that no damages had been proved would have followed inevitably; and, hence, that the refusals so to find constituted material and reversible error.

*Bohm* v. *Met. Elevated Ry. Co.* (129 N. Y. 576), and *Bookman* v. *N. Y. Elevated R. R. Co.* (*ante,* p. 298), followed.

*Malcolm* v. *N. Y. El. R. R. Co.* (78 Hun, 616), reversed.

(Argued June 5, 1895; decided October 29, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 18, 1894, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This action was brought to restrain the operation and maintenance of defendants' elevated railroad in front of plaintiff's premises and to recover the damages caused thereby.

The defendants' elevated railroad was constructed in Third avenue, on which the premises in suit abut, during the years 1877 and 1878, and trains began running in the latter year. Among the defendants' requests to find, which were refused by the trial judge, was one to the effect that the fee value of the premises in suit was, at the time of the trial, greater than at any time prior to the construction of the defendants' road. .

Other facts, material to the questions discussed, are stated in the opinions.

*Brainard Tolles* for appellants. There is no evidence to justify the finding that plaintiff's premises have been damaged. (131 N. Y. 520; *Storck* v. *M. El. R. Co.*, 131 N. Y. 521; *Becker* v. *El. R. Co.*, 131 N. Y. 511; *Bohm* v. *M. El. R. Co.*, 129 N. Y. 576; *Somers* v. *M. El. R. Co.*, 129 N. Y. 576; *Sutro* v. *M. R. Co.*, 137 N. Y. 592; *Adler* v. *M. El. R. Co.*, 138 N. Y. 177; *Bischoff* v. *N. Y. El. R. R. Co.*, 138 N. Y. 261; *Sperb* v. *M. El. R. Co.*, 137 N. Y. 598; *S. A. R. Co.* v. *M. El. R. Co.*, 138 N. Y. 548; *Cook* v. *N. Y. El. R. Co.*, 144 N. Y. 115; *Benson* v. *M. R. Co.*, 27 J. & S. 578; *Blum* v. *M. R. Co.*, 1 Misc. Rep. 110; *Brush* v. *M. R. Co.*, 26 Abb. [N. C.] 73; *Cunningham* v. *M. R. Co.*, 27 J. & S. 578; *Gray* v. *M. R. Co.*, 16 Daly, 510; 128 N. Y. 499; *Hadden* v. *M. El. R. Co.*, 75 Hun, 63; *Halsted* v. *M. R. Co.*, 2 Misc. Rep. 498; *Israel* v. *M. El. R. Co.*, 10 Misc. Rep. 722; *Johnston* v. *N. Y. El. R. Co.*, 10 Misc. Rep. 136; *Krumwiede* v. *M. R. Co.*, 9 Misc. Rep. 552; *McCready* v. *M. R. Co.*, 76 Hun, 531; *Mattlage* v. *N. Y. El. R. Co.*, 1

Misc. Rep. 339; *O'Reilly* v. *N. Y. El. R. Co.*, 76 Hun, 283; *Page* v. *M. El. R. Co.*, 10 Misc. Rep. 134; *Sloane* v. *N. Y. El. R. Co.*, 63 Hun, 300; *Sperb* v. *M. El. R. Co.*, 44 N. Y. S. R. 216; *Steinmetz* v. *M. El. R. Co.*, 18 N. Y. Supp. 209; *Sillcocks* v. *N. Y. El. R. Co.*, 10 Misc. Rep. 259; *Wright* v. *N. Y. El. R. Co.*, 78 Hun, 450; *Mayor, etc.*, v. *M. R. Co.*, 143 N. Y. 31; *In re City of Brooklyn*, 143 N. Y. 617.)

*E. W. Tyler* for respondent. No question of law is raised by this appeal. There was not only testimony that justified the award of these damages by the trial judge and the amount fixed by him as a condition of the avoidance of the injunction, but there was testimony that almost compelled the conclusion he came to. (*Storck* v. *M. El. R. Co.*, 131 N. Y. 514; *Bischoff* v. *N. Y. El. R. R. Co.*, 138 N. Y. 257; *Morange* v. *N. Y. El. R. R. Co.*, 74 Hun, 393; *Bohm* v. *M. El. R. Co.*, 129 N. Y. 592; *Becker* v. *M. El. R. Co.*, 131 N. Y. 509; *Adler* v. *M. El. R. Co.*, 138 N. Y. 173; *Cohn* v. *M. El. R. Co.*, 136 N. Y. 646.)

Finch, J. The premises claimed to have been damaged by the defendant's road were numbers 1213, 1215 and 1217 on Third avenue. They stood in an area, substantially vacant and mainly unimproved, for while there was some improvement on the west toward Fourth avenue, and possibly some further north, there was none or very little to the east and south. The first witness on the subject called for the plaintiff was Burchell, who bought the land in 1866, and put up the buildings in 1869. He remained owner until 1887. When he bought and when he improved he describes the locality as substantially vacant. He tells us that the side streets east of Third avenue have been almost wholly constructed since the coming of the elevated road: that he is positive that none of the four or five blocks up and down 70th street were paved before 1878, and that there were no buildings on any of those streets. In answer to quite a leading question by plaintiff's counsel, which almost begs for an affirmative answer

and reads in the record thus: "Take the period from 1873 to 1878, isn't it a fact that the city was greatly built up on the side streets there, lower down, up toward this region 59th to 70th streets," he said quite decidedly: "Not where my houses were." Freund, a real estate expert, called for the plaintiff, said: "In that immediate vicinity Third avenue was not very much improved; less from 70th street down to 66th street. On the east side property was entirely vacant, and on the west side. The northwest corner of 70th street was improved and 71st street. Some frame buildings on the block between 71st and 72d streets; 73d street was just about cut through at that time." On cross-examination, with his attention drawn to 1878, he said: "In fact almost all improvement has been made in that time in this immediate vicinity." So far there is no doubt about the facts.

But it is claimed that they are contradicted by Curtiss, another real estate expert called for the plaintiff, whose testimony the trial court was at liberty to believe. Where the experts on the same side neutralize each other the prudent course may be to disregard both. The witness did make some very broad assertions which he afterwards corrected, but in the main I think he did not change the situation, or raise a contradiction. Beginning with 1873 he said that the streets on the east side were vacant from 65th to 70th streets. In 1878 he declares that even on the west the streets were broken; that 72d street, east of the avenue, was only partially built upon, and the same was true of 71st street. He added: "If I said on my direct examination that there has been more development east of Third avenue before the elevated road, that is not true. It was west of Third avenue where the largest amount of building was. Most of the building that had taken place on Third avenue and in the side streets prior to 1877 was south of 60th street." He was asked to specify the building prior to 1878, and we find this answer in the record: "Towards building up Third avenue between 1873 and 1878 the beginning of 72d street, four houses on the southwest corner of 72d street and on Third avenue, one on

the northwest corner of 72d street and Third avenue, two flats on the west side of Third avenue, between 76th and 78th streets, on the west side, and a flat and a half front from 70th to 78th street on the east side, that is a 100 foot flat; that is about all the new buildings I recollect in that section." If he gave some loose and vague answers, his statements of detailed facts leave it clear that from 70th street south to 60th street Third avenue was substantially unimproved; that on the west, toward Fourth avenue, there was some building, and a little to the north, but the east was almost utterly vacant.

On this state of the proof the learned trial judge was asked to find as a fact that prior to 1877 the land in the vicinity of the premises in suit was largely unimproved and unutilized. There was a refusal and exception. That the request was material is settled by the doctrine of the *Bohm*[*] case, which we have just followed in the case of *Bookman.*[†] The request should have been granted since the uncontradicted evidence clearly proved the fact.

The trial court also found that the fee value of the premises had increased since the building of the road, but refused to find to the extent of increase requested, and also refused to find that the rental value had increased since the same date. The proof shows a rental of almost $7,000 in 1873, which was a speculative point of inflated values, and then a descent in consequence of the panic which followed to about $3,600 in the years 1878 and 1879, but promptly thereafter, and coincident with the construction and operation of the road, a steady and persistent rise up to $6,500 in 1886. Mr. Kyle, who collected the rents during the year of the trial, stated that the rent per month, not including the janitor's apartments, was $601.50, which gives for the year $7,217, an amount larger than in any year preceding the building of the road. That fact also the trial judge refused to find as requested.

The plaintiff's expert, Freund, put the fee value in 1873, the period of inflation, at $70,000, and the present value at

*129 N. Y. 576.        † *Ante,* p. 298.

$90,000. He stated the fee value in 1877 at $60,000, show-ing an appreciation since the construction of the road of about one-third. Curtiss agrees as to the last two values, and yet, with no evidence to the contrary, the trial judge refused to find the facts as requested. He does find, however, the obvi-ous truths that the station at 67th street is used by a great number of people, and makes the premises more acces-sible and more desirable for many business purposes.

If, therefore, the trial judge had found the facts requested, as he should have done, the legal conclusion that no damages had been proved would have followed inevitably under the doctrine of the *Bohm* case. The railroad comes into an area substantially vacant and unimproved. It finds values and rents at the lowest ebb following the panic. It brings in population, stimulates improvement, and causes values to rise until they exceed the highest limit of the speculative period which preceded the panic. The side streets grew, and their values increased largely from the same cause, and comparison with them only indicates a more or less unequal increment of benefit flowing from the same operative cause. The authority of the *Bohm* and *Bookman* cases requires us to hold that there was no proof of damage.

The judgment should be reversed and a new trial granted, costs to abide the event.

BARTLETT, J. (dissenting). This action is brought to recover the amount of injury to the fee and rental value of property by reason of the construction of the elevated railroad. The premises involved are Nos. 1213, 1215 and 1217 Third avenue, at the northeast corner of Seventieth street, in the city of New York, with a frontage of seventy-five feet on Third avenue by a depth of eighty feet, and upon the lot are erected three four-story buildings, each containing two stores and three upper floors used for dwelling purposes.

The judgment decreed the usual injunction against opera-ting the railroad of defendants in front of the premises in question and as incidental relief awarded $2,400 rental injury

from the 31st of May, 1887, when the plaintiff acquired title to the premises, to the 14th of June, 1893, the date of the trial. The judgment further provided for the avoidance of the injunction on payment of $6,000, found to be the injury done to the fee value, over and above the benefit, by reason of the construction of the railroad.

The defendants insist that the judgment is wholly unsupported by evidence and that this appeal presents only questions of legal error.

This case was tried for the second time by learned counsel of experience in this class of litigations, having before them the recent decisions of this court laying down the rules of evidence that should govern.

It is now confidently urged by the appellants that the uncontradicted facts, taken in connection with the settled law of this court, must lead to reversal.

It is desirable to apprehend clearly, at the outset, the points raised by this appeal.

As to fee value it will be observed that the trial court found, at the request of both plaintiff and defendants, that it had not decreased since 1878, but had increased since the year preceding the construction of the defendants' road ; there was a conflict of evidence only as to the amount of the increase in value.

As to rental value the trial court found that the injury was $400 a year for six years, the period of plaintiff's ownership from May 31, 1887.

In regard to fee value we have presented the question, whether, under the evidence, a finding of consequential damages, over and above all benefits resulting from the maintenance and operation of defendants' road, can be sustained in view of the fact that the fee value has increased since defendants built their road?

As to rental value the question arises, whether, under the proofs, the finding as to its injury can be sustained when the fee value has increased as already stated?

I will consider the question of rental value first. The appel-

lants contend that the uncontradicted evidence shows that the rental value of the premises has increased, and that plaintiff has failed to prove any injury.

A careful reading of the record satisfies me that this contention is erroneous, and that there is evidence to sustain the finding of rental injury to the extent of $400 a year. This court is not concerned with the weight of evidence, but has reached the limit of its jurisdiction when it finds sufficient evidence to warrant the action of the court below. As to whether the finding of injury to rental value can be sustained, notwithstanding the fee value has increased since the construction of the road, there is no rule of law prohibiting a recovery under such circumstances where the finding is supported by competent evidence. It is by no means improbable that the fee value of premises in certain localities may appreciate while the rental value of existing buildings devoted to residential and business purposes may decrease.

Whether rentals are to keep pace with fee values in a certain locality depends entirely upon the character of the buildings erected and the purposes for which they are used.

A manufacturing establishment may thrive where an apartment house would prove a ruinous investment.

I will now consider the finding of injury to fee value, and in so doing will put aside for the moment the fact that the market value of the fee has increased since the construction of the elevated road.

What evidence is there in this case on which to rest the finding that by reason of defendants' interference with the easements of light, air and access consequential damages resulted to the fee over and above all benefits?

In the first place it appears that the central portion of the street is covered by the track structure, which is thirty-seven feet six inches wide; the tracks come about half way up to the second story, that is, above the stores; there are three tracks and two outside track walks; the structure is supported by iron pillars, which are placed in the bed of the street;

there is one iron pillar in front of No. 1213, the corner house, and one in front of No. 1217, two houses north.

A watchmaker and jeweler, occupying one of the stores, testified he had noticed that whenever his door was open his show cases would be covered with dust very quickly, and that he had continually to wipe off the deposit; when, at his bench as a watch repairer, and there was a train passing, he would have to stop his work; that the work on watches required a pretty good light, a steady light.

Another witness from the residential part of the house swore that when sitting in the parlor or front rooms and a train passed there was a shadow or cloud created while it was passing; a witness also testified to cinders and dust.

This is sufficient to show the character of evidence introduced on this point. The plaintiff supplemented this class of proof by evidence as to values on Third, Lexington and Fifth avenues and a number of cross streets in the vicinity. There was a sharp conflict of evidence as to these values, but the question to be answered now is, what did plaintiff prove by his witnesses?

It was shown that values on Third avenue had advanced since 1873 from twenty to twenty-two and a half per cent; on the side streets in the vicinity and on Lexington avenue about 100 per cent, and on Fifth avenue very much more.

It is unnecessary to go further into the details of the evidence, as plaintiff's proof showed that Third avenue property had not experienced the same advance as other property in the neighborhood by a very large percentage, and it also established that the plaintiff's premises, involved in this controversy, were worth about $80,000, in 1873, and $90,000 at the time of the trial, which advance was less even than the average on Third avenue.

I think the evidence of interference with the easements necessarily tends to show a damage to the fee value when taken in connection with these proofs as to neighborhood values.

In the *Bohm* case (129 N. Y. at page 588) Judge PECK-

MALCOLM *v.* ELEVATED RAILROAD.

N. Y. Rep.]     Dissenting opinion, per BARTLETT, J.

HAM said : " It seems to me plain, from this review of the law, that the real injury (if any) suffered by the landowner in any particular case, lies in the effect produced upon his abutting land by the wrongful interference of defendants with these easements of light, air and access to such land. And when they are interfered with, and in legal effect taken to any extent, it is not possible to think of them as of any value in and of themselves separated from the adjoining land, but their value is to be measured by the injury which such taking inflicts upon the land which is left, and to which they were appurtenant."

Can it reasonably be said that it was not proper for the learned trial judge to consider all the evidence in this case as to interference with easements and as to the failure of Third avenue property to keep pace with the general advance of real estate values in the neighborhood and decide that the fee value of this property had been damaged to the extent of $6,000 ? I think this question was properly considered at the trial and at the General Term, and as the case stands it is a finding upon conflicting evidence with which we cannot interfere.

In the *Bohm* case (129 N. Y. at page 592) Judge PECKHAM further said : " The question is, what, in fact, has been the actual result upon the land remaining ? Has its actual market value been decreased by the taking, or has the taking prevented an enhancement in value greater than has actually occurred, and if so, to what extent ? "   *   *   *   (P. 593.) " Where it appears that the property left has actually advanced in value, unless it can be shown that but for the act of the defendant in taking these easements it would have grown still more in value, the fact is plain that it has not been damaged."

I come then to the effect on this case of the increase in fee value of the property since the elevated road was built.

The *Bohm* case distinctly recognizes that even though such an increase in value has taken place, yet if it can be made to appear that the premises would have grown still more in

value had the railroad not been built, then damage has been proved.

In the *Bohm* case it was said to be abundantly clear on the evidence that plaintiff's property had not suffered injury, and the question of neighborhood values was of no importance.

It has, however, been repeatedly held that the fee and rental values of neighboring property are competent evidence in this class of cases.

If competent evidence, it is for the reason it is material and likely to be of assistance to the court in reaching a just conclusion.

The practical question is, how was the plaintiff to prove his case?

Had there been marked depreciation in the fee and rental values since the completion of the railroad there would be little difficulty in making out a cause of action, but there is the other class of cases, referred to in the *Bohm* case, where there has been an advance in fee value and the owner desires to show that it would have increased even more if the easements had not been interfered with by the defendants and the road operated in front of his property.

I think a plaintiff in such a position may prove the effect of the road upon the fee and rental value of other property situated on the same avenue upon which the railroad is operated; also as to property situated on adjacent avenues and side streets; he may show the condition and growth of the neighborhood before and after the road was constructed; he may prove the direct effects upon the property of interference with the easements of light, air and access.

What more could he do? This court has said that in such a case the opinion of an expert as to what would have been the value of plaintiff's property had defendants' road not been built and operated is incompetent evidence. (*Roberts* case, 128 N. Y. 455.)

The question of damage is one of legal deduction by the trial judge or jury when the facts referred to are duly proved.

The decision in the *Roberts* case was placed upon the pre-

cise ground that the expert was asked to determine the very question that ought to be answered by the court or jury.

It cannot be expected that a plaintiff would be able to show to a dollar the amount of damage his property has suffered by reason of the construction of the elevated road; nor can it be said because accurate proof in this class of cases is difficult that damages cannot be proved by showing all the surrounding facts and allowing the trial judge or jury, in the exercise of a sound, honest judgment, to fix the amount.

Such a result is not guessing or speculation, but is a judicial estimate based upon all the known facts involved in the problem submitted for solution.

It would be a new doctrine to hold that the recovery of damages is limited to those cases where absolute proof of a sum certain can be made; if such were the case a large number of plaintiffs would be remediless in courts of justice.

There would seem to be nothing unreasonable in the proposition that residential property along the line of the elevated railroad may experience only a slight advance in fee value after the construction of the road, while property off the line, but in the immediate vicinity, may appreciate in value very largely for the reason that it has enjoyed all the benefits conferred by the presence of the road in the locality, and the natural growth of the city due to increase of population and business, without suffering from those injuries necessarily inflicted on property in immediate contact with the road.

The elevated railway companies are entitled to receive from the courts ample protection in view of the numerous actions they are called upon to defend and the vast amounts involved in their determination, and judgments against them ought not to be upheld resting upon mere speculation unsupported by evidence, but, on the other hand, plaintiffs whose property may have experienced a small advance in fee and rental values since the completion of the elevated railroad ought not be remediless when all the facts render it clear that property along the line of the road has been damaged by the interference with the easements of light, air and access, and

has, for that reason, failed to share the advance in values of adjacent property, manifestly due not only to the construction of the elevated system, but to that natural growth which the neighborhood would have experienced by reason of increase of population and business in a great city even if the railroad had never been constructed.

I am thus brought to the vital question in this case, whether plaintiff was entitled to introduce evidence tending to show that the increase of his property in fee value was not as great as it would have been from natural causes if the elevated road had not been built, and was the court authorized to consider that evidence in determining whether there had been an injury to fee value over all benefits?

This court has held that, in estimating damages to property, all benefits to the rental or fee value resulting from the existence of the railway are to be considered, and that only damages over and above benefits are recoverable. (*Sutro* case, 137 N. Y. 592; *Bischoff* case, 138 N. Y. 262.) If the value of the benefits that the elevated railroad has conferred upon the property, over and above all other benefits arising from the natural growth of the locality, without regard to the existence of the railroad, is fairly deducible by the court from surrounding circumstances, in the exercise of a sound judicial judgment, it is difficult to understand why it is not equally competent for the court to determine the amount of those other benefits which might have accrued to the property had the road never been built. In fact, it is necessary to separate these two classes of benefits which go to make up the total value of the property before the value of either can be ascertained.

The appellants cannot successfully contend that the growth of the locality where this property is situated is wholly due to the elevated railroad; so in finding the value of one class of benefits, you necessarily find the other.

The rule for proving damages, as laid down in the majority opinion in the *Bookman* case (*ante*, p. 298), is plausible and reasonable as an abstract proposition, and is an easy way of escape out of a wilderness of difficulties

which beset the path of court and counsel in elevated railway litigations; but the ordinary facts presented in these cases are not such, in my judgment, as to justify its application.

I am not aware of any locality from the Battery to the northmost limits of the city of New York which fully answers the requirements of this new rule — " a vacant and uninhabited locality, which normal growth has not effectively reached, which improvement has not seriously touched, which remains to be developed, and which has no element of growing value except such as lies in hope and expectation." While this entire territory is not fully built up and improved its future is assured.

While I am willing to admit that the elevated railway system has been of great and lasting benefit to the city of New York, I cannot concede that we are to ascribe to it alone the marvellous growth of that city since the year 1878. We have presented in this connection a complex and difficult question, but to my mind it is absolutely clear that one of the principal factors in this matter of municipal development is the natural and irresistible increase of population and business in a commercial city like New York, whose swarming population is constantly augmented from sources foreign and domestic.

It is not the elevated railways which have created the city, but it is the city which has made these corporations possible.

Every square foot of the territory within the city of New York feels the impulse of this normal growth of population and business ; and I can but think it a just rule which holds that where the elevated railway is extended into a new locality, the property owner, whose easements of light, air and access are interfered with, should be allowed to prove, if possible, that his property would have been of greater value if it had been left to enjoy the natural growth of the city in population and business without the aid of the elevated road.

It many cases it will, doubtless, be difficult, if not impossible, to make such proof, but it is better to let each case

41

stand on its own peculiar facts rather than lay down a general rule that may deprive many persons of the right to invoke the aid of the courts in a proper claim for damages.

The judgment appealed from should be affirmed, with costs.

Andrews, Ch. J., Peckham and Haight, JJ., concur with Finch, J., for reversal; O'Brien, J., concurs with Bartlett, J., for affirmance, and Gray, J., concurs in that result.

Judgment reversed.