well as the defendant was an attorney at law, it is unnecessary to decide upon this appeal. Upon the facts as they appear in the complaint, it is sufficient to say that the judgment below was erroneous, and must be reversed, and that the defendant must have judgment upon the demurrer, with costs, with leave to the plaintiff to amend his complaint on payment of costs of this appeal and of the demurrer in the court below. All concur.

---

(5 App. Div. 398.)

LAZARUS et al. v. METROPOLITAN EL. RY. CO. et al.

(Supreme Court, Appellate Division, First Department. May 22, 1896.)

1. ELEVATED RAILROADS—INJURIES TO ABUTTERS—EVIDENCE.
    In an action to enjoin the operation of an elevated railroad in front of plaintiff's premises, and for damages, evidence that after the construction of the road certain tenants who formerly let the building lost money, and surrendered their leases in consequence, is not relevant to the question of the rental damage which plaintiff has sustained, where the evidence shows that after the construction of the road there was a steady increase of the rental value.

2. SAME—FEE DAMAGES.
    In such case an award of fee damages, based on the fact that plaintiff's premises did not increase in value proportionately with property on the other side of the street, cannot be sustained where it is shown that the exchanges were on the other side of the street, that the stock exchange was the center of business, and that even the interposition of the street in question with its traffic bears on the values of the respective sides.

Appeal from judgment on report of referee.

Action by Sarah Lazarus and others against the Metropolitan Elevated Railway Company and others for an injunction and damages. Judgment was entered in favor of plaintiffs, and defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Julian T. Davies, for appellants.
Nelson S. Spencer, for respondents.

O'BRIEN, J. This is the usual suit in equity, and has been twice tried. On the first trial the referee gave the plaintiffs $2,500 per year rental damage, and $30,000 as compensation for alleged impairment of the easements. The referee here gives $5,000 per year rental damage, and $35,000 as compensation for the easements. We thus have as the total amount of the first judgment, with costs, $50,507.68, as against an award of $83,416.51 in the judgment appealed from; or, expressing the award made per running foot, it would be under the first judgment $1,772.20, as against $2,979 fixed by the referee in the judgment appealed from. On the former trial it appeared that Moses Lazarus, who was the owner of the property, died March 9, 1885, leaving a will, whereby he devised the property to his seven children, one of whom, Emma Lazarus, died unmarried,

intestate, and without issue, on November 19; 1887, leaving the plaintiffs as her heirs at law and next of kin, and Frank Lazarus was appointed her administrator, but was not made a party to the action; and, the objection having been taken of defect of parties, in that Frank Lazarus, as administrator of the estate of Emma Lazarus, deceased, had not been made a party, while the judgment allowed a recovery for the share assigned to the estate of said deceased, this objection was held good and the judgment upon that ground, among others, was reversed, and a new trial granted.    23 N. Y. S. 515.    Subsequently, on application, an order was entered providing that Frank Lazarus, as such administrator, be made a party plaintiff, and that the summons, complaint, answer, and all subsequent papers in the action be amended accordingly, that such administrator serve an amended and supplemental complaint, and that defendants be allowed in answer to plead the statute of limitations to any claim against them.    No supplemental complaint was served, and, the terms of the order being disregarded, no opportunity was afforded of interposing any defense.    The referee here has allowed the administrator to recover for the same period, and, this having been done contrary to the terms of the order, the objection to such allowance must be regarded as valid.

Were there no other question involved, we might very well have modified the judgment by deducting the portion due to such administrator; for, the award having been fixed upon a basis which would make the deduction easy of computation, such course might have been followed.    We cannot, however, upon the record before us, permit this judgment to stand, based, as we conceive it to be, upon erroneous principles applied to evidence, some of which was competent and some incompetent.    The premises in question are situated at the northeast corner of Broadway and Exchange alley, running through to Trinity place or New Church street, and have a frontage of 28 feet 6 inches on Broadway, and 28 feet 5 inches on Trinity place, with a depth of 203 feet 7 inches on the north side, and 202 feet 4 inches on the south side along Exchange alley, and are known only as "No. 57 Broadway"; there being no exits on Trinity place except from the basement, which is the first story on that street, the tenants of the rear offices using the Broadway entrance.    The building is nearly 50 years old, and the referee states, as the fact is, "that the value of the premises lies rather in their adaptability as a site for a new building than in their rental value with the present building upon them."    No elevator was put in the building when it was erected, and the one subsequently placed therein is a single, old-fashioned one, just west of the center of the building.    No substantial alterations or changes were made from 1850 to 1886, and, with the exception that in the latter year the north flank wall was rebuilt, the premises have remained unimproved, requiring constant repairs to keep it in suitable condition as an office building, and in competition with the great number of new, modern, and improved buildings, which, for a similar purpose, have been erected in that vicinity. While claiming damage to have been done by the elevated railroad

to the whole building, which it is insisted should be measured by its rental value as an entire building, yet the respondents concede that in estimating such damages the defendants' structure does not affect the rents of the offices on the Broadway front of the building, and that the basis upon which the damage is to be measured is by a comparison. of the offices on the Broadway front with those on Trinity place facing the structure; and, as these latter rentals are much lower than on the Broadway front, the respondents claim that the inference may be fairly drawn that the difference is owing to the existence of the defendants' road; that, except for the latter cause, the offices in the rear should rent for higher, or as high, prices as the offices in the front. It is not claimed that the rents of this building, either in the front or rear offices, have not increased, for the testimony shows that, in common with all the property in that vicinity, there has been a marked increase, and a comparison of increase in rental value with other buildings is favorable to the plaintiffs' building. Notwithstanding such comparison, however, it does appear that the rear offices on the first, second, and third floors are affected and damaged by the elevated road; the area affected, taking the number of square feet, being about one-seventh of the total area of the building; and for the damage thus suffered the plaintiffs should receive adequate compensation. That the referee misconceived the elements which should be regarded in determining such damages, which resulted in the excessive award made by him, is apparent when we refer to a few of the items which he thought especially worthy of consideration. Thus he says: "It is in evidence that both of the tenants who formerly let this building * * * lost money, and surrendered their leases in consequence." It may be conceded that these tenants paid more than the rental value of the property, and that by reason thereof they may have been injured; but, the owners of the property having received a steadily increasing rental, it is difficult to determine the relevancy 'of the individual losses of these lessees upon the question of the rental damage which the plaintiffs suffered by reason of the acts of the defendants. The burden placed upon the plaintiffs was to show either that the rental had depreciated, or that it had not maintained a normal increase; and, while the evidence might have justified the referee in concluding that they had sustained this burden to some extent, the record is barren of any evidence to support any such judgment as was awarded for rental damage.

Equally fallacious was the conclusion as to the extent of damage to the fee, the view taken in effect being that, as this property on the west side of Broadway did not increase in value proportionately to property on the east side of Broadway, this was due to the presence of the elevated railroad on Trinity place. It was shown that the exchanges are, and always have been, to the east of Broadway, and it is conceded that the stock exchange is a center of business; and that even the interposition of Broadway with its traffic bears upon the values of the respective sides, as does the proximity of properties on the two sides with reference to Wall

street.   The experts for both plaintiffs and defendants show that both the rental and fee values of this property increased steadily from the period after the panic of 1873, and more particularly from 1878 to 1885, appreciating during that time in fee value from $225,-000 in 1878 to $350,000 in 1885.   It is true that other property on the east side of Broadway, and nearer to Wall street, increased in a greater ratio; but that there has been a large increase in this property even since 1889 we think the evidence clearly shows, such increased value being in the main part due to the desirability of all property on Broadway in the neighborhood of exchanges for office buildings.   It appearing, therefore, that this property has enjoyed an increase in common with other property with which legitimate comparison could be made, both in rental and fee value, and without taking into consideration any benefits, if conferred, by the elevated roads, it is impossible upon this evidence to sustain the judgment for any such amount as was here awarded.   The referee himself states in his opinion that "it is extremely difficult to arrive at a just estimation of the loss of rents or depreciation of the fee value of the premises in question owing to the operation of the elevated railway."   But this difficulty is not to be solved, as the referee solved it, by proceeding to compare this property with properties on the other side of Broadway running through to New street and abutting on the stock exchange.   Not only was such a comparison, from the mere situation of the buildings themselves, likely to lead the referee into error, but the difference in the character of the buildings—the one modern and complete, and the premises in suit in many respects antiquated, and without the conveniences that the more modern buildings possess—precludes comparison.   Adopting the plaintiffs' theory as to another method of computation, the learned referee took the average rental at the present time of the side offices of the premises in suit on Exchange alley in front of the elevator, not affected, the side offices back of the elevator, partially affected, and the rear offices affected; and from the differences thus appearing, by another method, he arrived at a conclusion as to rental damage.   If, however, we compare, not the rentals at the present time alone, but the rentals as they existed prior to the elevated railroad, the evidence shows that the disparity between the offices in front and on the alley and those in the rear was greater in 1873 than in 1893.   And, while conceding a substantial damage to the rear portions already mentioned, that it could not be as great as the judgment awarded can be seen when we take the one portion which the referee finds to have been most seriously injured, namely, the basement, it appearing from the rental history of that portion of the building that it advanced from $2,000 in 1873 to $4,000 in 1886, and then to $7,000 in 1893; an increase greater than any property offered in comparison, except one at the corner of Rector street and Trinity place, on the line of the road, and even as to that the rental of the basement was not as great as in plaintiffs' property.

In addition to what we have said, we deem it unnecessary to

point out errors which appear as to rulings upon evidence, preferring, as we do, to discuss the merits of the award itself, which, when compared with the extent of the property involved, would seem, as a matter of first impression, to be excessive, and, when examined in the light of the record, not sustainable, unless now, for the first time in cases of this kind, the rule is to be changed by allowing punitive, instead of compensatory, damages.

Upon the merits, and for errors in rulings, therefore, we think this judgment should be reversed, and a new trial ordered before another referee, with costs to appellants to abide the event. All concur.