LAZARUS et al. v. METROPOLITAN EL. RY. CO. et al.

(Supreme Court, Appellate Division, First Department. February 12, 1897.)

1. APPEAL—MODIFICATION OF JUDGMENT.

    In an action for damages caused by the construction of an elevated railroad, in which there have been several trials and appeals, the appellate division will, on the record, modify the judgment as to amount, in order to avoid hardships which would be inflicted and the complications that would arise on a new trial because of the sale of the property, etc., where it can reach a conclusion without doing injustice to defendant by disregarding incompetent evidence. and basing the decision on settled principles.

2. ELEVATED RAILROADS—DAMAGES.

    In an action for damages caused by the construction of an elevated railroad, it appeared that the administrator of plaintiffs' ancestor, who died intestate, was entitled to a share of the damages accruing between certain dates. On plaintiffs' application, it was ordered that the administrator be made a party plaintiff, and that he should serve an amended or supplemental complaint, setting forth his interest, which defendants were given leave to answer. *Held,* that where the terms of the order were disregarded, in that no supplemental complaint was served, a recovery would not be allowed for the administrator's interest.

On reargument. Judgment modified.

For report of decision on the hearing of the appeal, see 39 N. Y. Supp. 294. For order granting a reargument, see 41 N. Y. Supp. 1120.

O'BRIEN, J. There have been two trials of this case, and in the opinions delivered upon the two appeals from the judgments entered after such trials the facts and questions involved have been fully stated and discussed. 69 Hun, 191, 23 N. Y. Supp. 515; 5 App. Div. 398, 39 N. Y. Supp. 294. Affected by considerations of the hardship which would be inflicted and the complications that would arise upon a new trial, because of the sale of the property pending the appeal and the other special reasons advanced, we granted a rear-

gument, to the end that a single question might be considered,—as to whether, upon the record, we could, in justice to the defendants, modify the judgment as to amount, and thus obviate the necessity of still another trial. We have been impressed by the forcible reasons advanced against such a course, and we would have refused to consider the question anew but for the impression derived upon the motion for reargument, which has been confirmed by a re-examination of the voluminous record, that, by entirely disregarding the incompetent evidence, and basing our decision upon settled principles, we could reach a conclusion without doing any injustice to the defendants.

The premises are situated at the northeast corner of Broadway and Exchange Alley, running through to Trinity Place, or New Church Street, and have a frontage of 28 feet 6 inches on Trinity Place, with a depth of 203 feet 7 inches on the north side, and 202 feet 4 inches on the south side, along Exchange Alley, and are known as "No. 57 Broadway." There are no exits on Trinity Place, except from the basement, which is the first story on that street, the tenants of the rear offices using the Broadway entrance.

As said in Bischoff v. Railroad Co., 138 N. Y. 262, 33 N. E. 1074:

"The principles governing the award of damages in cases like this have come to be quite well understood. The property rights of an abutting owner consist of easements of light, air, and access. * * * The damages and the compensation to be paid are measured by the balance of injury over benefits, and, in ascertaining them, the advantages and the disadvantages are to be considered, and the benefits, whether general or special, from the construction and operation of the railroad which tend to counterbalance the damages, are to be taken into account in reaching the final result."

It is shown that the rental and fee values of this property have increased, the latter appreciating from 1878 to 1885 from about $225,-000 to about $350,000. This rise in value, though to some extent attributable to increased facilities in travel furnished by various railroad companies, including the defendants, was mainly due to an active demand for land in the lower part of the city suitable for high office buildings, and to the city's normal growth. Conceding, as we must, that the plaintiffs' property, in common with all other similarly situated in the lower part of the city, received some benefit from the erection of the elevated railroads, it still appears, after allowing for such benefits, whether general or special, that the plaintiffs have been injured, and that this injury as respects the rear portions of the premises is substantial. Among other items of damage may be mentioned the continual switching and stopping of trains in front of the premises, the proximity of a watering station where engines are continuously in process of watering, and the further fact that in front of the rear entrance to the premises the defendants have located a supporting pillar, and that the road at this place is covered with a platform under which are placed dripping pans; thus directly interfering with the plaintiffs' easements.

Without discussing in detail the estimates furnished by the experts produced by either side, or dwelling upon the elements of damage as offset by the benefits, we think the plaintiffs would be compensated by the payment of $13,000 for injury to the fee, and of

$1,500 per annum for rental or past damages. Although our conclusion is based entirely upon the evidence in this record, it is proper to refer to the fact that these awards approximate nearly to those which were affirmed by the general term in the two cases of Peter Suarez and Benigno Suarez against the Manhattan Railway Company (15 N. Y. Supp. 222, 224). In the Case of Peter Suarez, relating to 63 Broadway (91 Trinity Place), the frontage on the latter was 37 feet 10 inches; and there the fee damage allowed was $12,000, and the rental damage was at the rate of about $1,300 a year. And in the Case of Benigno Suarez, relating to 65 Broadway (89 Trinity Place), which had a frontage on the latter of 37 feet 10 inches, the fee damage was placed at $15,000, and the rental at about $1,500 a year. It will be noticed that the frontage of the premises here involved is 9 feet 4 inches less than that of the Suarez properties. The difference, however, in the dimensions of the properties, is more than counterbalanced by the greater burden placed on these premises, certain elements of which we have already adverted to.

It appears that Emma Lazarus "died on the 19th of February, 1887, intestate, leaving the plaintiffs her only heirs at law and next of kin. It is perfectly clear that her administrator is entitled to her share of the damages accruing between the 5th of March, 1885, and the 19th of February, 1887." Lazarus v. Railroad Co., 69 Hun, 196, 23 N. Y. Supp. 515. Although on plaintiffs' application an order was entered providing that the administrator be made a party plaintiff, it was further provided that the latter should serve an amended or supplemental complaint, setting forth his interest, to which the defendants were to have leave to answer. The terms of the order were disregarded, in that no supplemental complaint was ever served, and the defendants were therefore deprived of the opportunity to interpose their defense. Under the circumstances, we do not think it would be proper to allow a recovery in this action for the interest of such administrator; but, as Emma Lazarus was entitled to a one-seventh interest for the period mentioned, it is a matter of computation, and can be deducted.

The judgment should accordingly be modified by reducing the fee damage to $13,000, the rental damage to $1,500 a year (from which should be deducted the one-seventh interest of Emma Lazarus for the period mentioned), and allowing interest thereon from the date of trial to the date of entry of judgment, and costs in the court below, and by reducing the extra allowance to $1,250. As so modified, the judgment should be affirmed, without costs to either party upon this appeal. All concur.